# IN THE COURT OF APPEALS OF IOWA

No. 20-1096
Filed November 4, 2020

**IN THE INTEREST OF M.W.,**
**Minor Child,**

**M.W., Father,**
        Appellant,

**T.T., Mother,**
        Appellant.

_____


        Appeal from the Iowa District Court for Polk County, Lynn Poschner, District Associate Judge.


        A mother and father each appeal the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**


        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant father.

        Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Yvonne C. Naanep, Des Moines, attorney and guardian ad litem for minor child.


        Considered by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother and father each appeal the juvenile court order terminating their parental rights. There is clear and convincing evidence in the record to support termination of the mother's parental rights, and termination is in the child's best interests. The record is void of evidence that would support either parent's request for additional time to work on reunification. Lastly, none of the exceptions in Iowa Code section 232.116(3) (2020) should be applied to prevent termination under these facts. We affirm termination of the parents' rights.

## I.      Background Facts & Proceedings

M.W., father, and T.T., mother, are the parents of M.W., who was born in 2017. The child was removed from the mother's custody on March 19, 2019, due to concerns the mother was using methamphetamine and not providing adequate care and housing for the child. The father was in prison in Minnesota. He remained incarcerated throughout the juvenile court proceedings. The child was placed in the custody of the maternal grandmother, where he remained at the time of the termination hearing.

After the removal, the mother had only one face-to-face visit with the child, which was on March 29, 2019. On April 22, the child was adjudicated to be in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2019). The mother did not appear for the adjudication hearing. She moved to Florida with her boyfriend. The mother did not cooperate with a request for an interstate compact home study in September. While she participated in a second request in November, her roommates would not cooperate, so the interstate compact home study was not completed.

For the first year after removal, the mother did not participate in recommended therapeutic services. She did, however, participate in telephone and video contact with the child. When the maternal grandmother supervised the video visits, the mother was aggressive at times, and the mother and maternal grandmother would argue while the child was on the telephone. The Iowa Department of Human Services (DHS) then required the video visits to be supervised by Family Safety, Risk, and Permanency (FSRP) services. The mother was also combative on occasion with social workers on the telephone. She indicated that she smoked marijuana and drank alcohol. The father had weekly telephone contact from prison with the child. Due to his young age, the child was not very interested in conversations with his parents on mobile devices.

On February 12, 2020, the State filed a petition seeking termination of the parents' rights. In March, the mother started a substance-abuse treatment program. In June, she started participating in therapy for her mental-health problems. The termination hearing commenced on June 24 and continued on July 9. Between the first day of the hearing and the second day, the mother signed a new lease with the same roommateswho would not cooperate with the interstate compact home study. Also, by the second day of the hearing, the mother had missed services in the previous week. The father testified his expected release date from prison was January 2021. He will be on parole in Minnesota for twenty months following his release.

The juvenile court terminated the mother's parental rights under section 232.116(1)(e) and (h) (2020) and the father's rights under section 232.116(1)(h). The court stated, "[The child] has needed a caregiver to live with, to provide a safe

home for him, to provide for him each day. . . . [He] should not have to wait anymore for a resolution to who will take care of him into adulthood." Also, "[t]he court is unable to find that the need for removal will no longer exist at the end of [a six-month] extension [of time]." The court determined termination of the parents' rights was in the child's best interests and declined to apply an exception contained in Iowa Code section 232.116(3) to prevent termination. The mother and father each appeal the juvenile court's decision.

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III. The Mother

**A. Sufficiency of the Evidence.** The mother contends there is not sufficient evidence in the record to support termination of her parental rights. "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate

on one of the sections to affirm." *Id.* at 435. We focus on the termination of the mother's parental rights under section 232.116(1)(h).[1]

The mother contests only the fourth element of section 232.116(1)(h)— whether the child can be safely returned to her care. A child cannot be returned "if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home." *Id.* We consider whether there is clear and convincing evidence to show a child could be returned to a parent's care at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

At the time of the termination hearing, the mother had only just started taking steps to address the problems that led to the removal of the child from her home. The mother did not begin participating in substance-abuse treatment or counseling for her mental health until after the termination petition was filed, nearly a year after the removal of the child. Furthermore, by the second date of the termination hearing, the mother had missed services the prior week. The mother's

---

[1] Section 232.116(1)(h) provides for termination of parental rights if the following elements are met:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

residence remained in Florida in a home that had not been approved for placement. The same problems that led to the CINA adjudication in April 2019 were present at the time of the termination hearing. We conclude the child could not be safely returned to the mother's care. *See M.M.*, 483 N.W.2d at 814. We find the statutory grounds for termination were met under section 232.116(1)(h).

**B. Best Interests and Extension of Time.** The mother also claims termination of her parental rights is not in the child's best interests. As part of her best-interests argument, the mother asserts she should be given a six-month extension to work on reunifying with her child. The mother admits there were delays in the past, but she states this was due to a lack of insurance. She states that she is now participating in services and asks for an extension of time.

We find termination of the mother's parental rights is in the child's best interests. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (noting we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child" (quoting Iowa Code § 232.116(2))). The child needs the stability of a parent who is present to care for him. The mother's actions show she has not made the child a priority in her life. The child is in the custody of a relative where he will have a permanent home.

The juvenile court may decide not to terminate parental rights if it finds there is clear and convincing evidence that CINA proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). The court may continue the proceedings

for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The juvenile court addressed this issue and found:

> The Code also allows for the establishment of permanency through an extension of permanency under 232.104(2)(b). The court is unable to find that the need for removal will no longer exist at the end of the extension. [The mother] has just begun to address the issues that led to [the child] being removed from her care. For the vast majority of this case—the first twelve months—[the mother] did not take any steps to participate in a substance abuse evaluation or mental health treatment. . . . Given the overall history of the case there is no reason to believe that six more months would result in reunification when so much time has already passed and reunification of this young child is not possible and [the mother] only began to address her substance abuse and mental health needs when a termination of parental rights hearing was imminent.

We agree with the juvenile court's conclusions on this issue.

**C.      Permissive Exception to Termination.**      As with her claim concerning a six-month extension, the mother, as part of her best-interests argument, also claims an exception contained in Iowa Code section 232.116(3) should be applied, asserting the bond between herself and M.W. should prevent termination. We reject this argument. At the time of the termination hearing, the mother had not had any physical contact with the child for over a year, choosing to move to Florida with her boyfriend around the time of removal rather than remain in Iowa.[2] While DHS attempted two separate interstate compact home studies on the mother's Florida residence, both were denied.

---

[2] We recognize some limitations the COVID-19 pandemic has placed on visitation. However, in the instant case, the mother moved to Florida a year prior to the outbreak of the pandemic, with the termination hearing beginning in June 2020.

IV.     **The Father**

A.     **Extension of Time.**  Like the mother, the father asks for additional time to work on reunification with the child.  He states that he expects to be released from prison in January 2021.  He asserts that he would be available to care for the child after he is no longer incarcerated.  He points out that he consistently participated in telephone calls with the child.  The father states he has housing and employment secured upon his release from prison.

The juvenile court stated:

[The father] will be released from prison in roughly five months.  Then he will hopefully begin to use the skills he has learned in prison to establish a stable and sober life for himself.  This will be a new challenge for [the father].  He has not lived in the community for several years.  There is not a reasonable likelihood that [the child] could be placed in his custody with six months.

We concur in the court's findings.  The father has been in prison for most of the child's life.  Even after the father is released, he will need to establish himself in a stable lifestyle in order to be a reliable caretaker for the child.  It is not reasonably likely "the need for removal . . . will no longer exist at the end of the additional six-month period."  *See id.*

B.     **Permissive Exception to Termination.**  Alternatively, the father claims the juvenile court should have applied section 232.116(3)(a) to preclude termination, as this section permits a juvenile court to preclude termination when "[a] relative has legal custody of the child."  We reject this argument.  Section 232.116(3) exceptions are permissive, not mandatory.  *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).  In addition, the burden of establishing a section 232.116(3) exception rests with the parent contesting termination.  *See In re A.S.*,

906 N.W.2d 467, 476 (Iowa 2018).  The father presented no compelling evidence to apply this exception.  We, like the juvenile court, find that given the child's age and need for permanency, this exception should not prevent termination.

We affirm the decision of the juvenile court.

**AFFIRMED ON BOTH APPEALS.**